# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GENZYME CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | C.A. No. 1:09-cv-00563-JFM |
| v. | ) | |
| | ) | |
| LUPIN LTD., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| GENZYME CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | C.A. No. 1:09-cv-00653-JFM |
| v. | ) | |
| | ) | |
| IMPAX LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| GENZYME CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | C.A. No. 1:09-cv-00846-JFM |
| v. | ) | |
| | ) | |
| IMPAX LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| GENZYME CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | C.A. No. 1:09-cv-01258-JFM |
| v. | ) | |
| | ) | |
| LUPIN LTD., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

```
                                                )
GENZYME CORPORATION,                            )
                                                )
                Plaintiff,                      )
                                                )
                                                )   C.A. No. 1:09-cv-01750-JFM
        v.                                      )
                                                )
SANDOZ INC.,                                    )
                                                )
                Defendant.                      )
                                                )
GENZYME CORPORATION,                            )
                                                )
                Plaintiff,                      )
                                                )
                                                )   C.A. No. 1:09-cv-02589 -JFM
        v.                                      )
                                                )
ENDO PHARMACEUTICALS INC.,                      )
                                                )
                Defendant.                      )
                                                )
```

## JOINT RULE 26(f) REPORT

Pursuant to FED. R. CIV. P. 26(f), attorneys for Plaintiff Genzyme Corp. ("Genzyme") and Defendants Lupin Limited and Lupin Pharmaceuticals, Inc. (collectively, "Lupin"); Impax Laboratories, Inc. ("Impax"); Sandoz Inc. ("Sandoz"); and Endo Pharmaceuticals Inc. ("Endo") met and conferred on November 3, 2009, and hereby submit the following Joint Rule 26(f) Report in the above-entitled actions.

### I.   BRIEF STATEMENT OF THE FACTS AND LEGAL ISSUES.

This action arises under the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. § 301 et seq., as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman"), and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA") (collectively, "Hatch-Waxman Act"). Genzyme markets

two drugs—Renagel® (sevelamer hydrochloride), 400 and 800 mg tablets, and Renvela® (sevelamer carbonate), 800 mg tablets—used for the treatment of hyperphosphatemia (excessive blood levels of phosphate) in patients with chronic kidney disease on dialysis.

Renagel® (sevelamer hydrochloride) and Renvela® (sevelamer carbonate) have the following patents listed in the U.S. Food and Drug Administration's "Orange Book":

| Renagel® (sevelamer hydrochloride), 400 and 800 mg | | Renvela® (sevelamer carbonate), 800 mg | |
|---|---|---|---|
| U.S. Patent No. | OB Expiration | U.S. Patent No. | OB Expiration |
| 5,596,545 | August 11, 2013 | 5,596,545 | August 11, 2013 |
| 5,667,775 | September 16, 2014 | 5,667,775 | September 16, 2014 |
| 6,509,013 | August 11, 2013 | 6,509,013 | August 11, 2013 |
| 6,733,780 | October 18, 2020 | 6,858,203 | August 11, 2013 |
| 7,014,846 | August 11, 2013 | 7,014,846 | August 11, 2013 |
| 7,459,151 | August 11, 2013 | 7,459,151 | August 11, 2013 |

1. **Lupin**.

Lupin has filed pursuant to 21 U.S.C. § 355(j) Abbreviated New Drug Application ("ANDA") No. 90-569 seeking FDA approval to commercially market 400 and 800 mg sevelamer hydrochloride tablets. Lupin has submitted to the FDA in connection with its ANDA No. 90-569 certifications pursuant to 21 U.S.C. § 355(j)(2)(B)(iv) ("Paragraph IV") asserting invalidity, non-infringement and/or unenforceability of U.S. Patent Nos. 5,596,545 ("'545 patent"); 5,667,775 ("'775 patent"); 6,509,013 ("'013 patent"); 6,733,780 ("'780 patent"); 7,014,846 ("'846 patent"); and 7,459,151 ("'151 patent"). Lupin has subsequently converted its Paragraph IV certifications for the '545, '013, '846, and '151 patents to certifications pursuant to 21 U.S.C. § 355(j)(2)(B)(iii) ("Paragraph III") indicating that Lupin is not seeking FDA approval of ANDA No. 90-569 prior to expiration of those patents.

Lupin has also filed ANDA No. 91-026 seeking FDA approval to commercially market 800 mg sevelamer carbonate tablets. Lupin has submitted to the FDA in connection with its

ANDA No. 90-569 Paragraph IV certifications asserting invalidity, non-infringement and/or unenforceability of '545, '775, '013, '846, and '151 patents and U.S. Patent No. 6,858,203 ("'203 patent").  Lupin has subsequently converted its Paragraph IV certifications for the '545, '013, '203, '846, and '151 patents to Paragraph III certifications indicating that Lupin is not seeking FDA approval of ANDA No. 90-569 prior to expiration of those patents.

On March 6, 2009, Genzyme sued Lupin in this Court for infringement of the '545, '775, '013, and '846 patents in connection with Lupin's sevelamer hydrochloride ANDA (09-cv-563). (Docket Item No. ("D.I.") 1).  The '151 patent was subsequently asserted in the 09-cv-563 action upon the filing of the First Amended Complaint.  (D.I. 30).  On June 4, 2009, Lupin answered the Complaint and filed a Counterclaim with counts seeking declaratory judgments of invalidity and/or non-infringement of the '545, '775, '013, '780, '846 and '151 patents.  (D.I. 31).  On August 20, 2009, a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(c) was filed by Lupin for the count of its Counterclaim directed to the '780 patent.  (D.I. 44).  In view of the Paragraph III certification filed for the '545, '013, '846, and '151 patents, this Court lacks subject matter jurisdiction over the counts of Genzyme's Complaint and Lupin's Counterclaim directed to those patents in the 09-cv-563 action.  A stipulation of dismissal has been filed and those counts of Genzyme's Complaint and Lupin's Counterclaim have been dismissed.  Only one patent is at issue in the 09-cv-563 action—the '775 patent.

On May 14, 2009, Genzyme sued Lupin in this Court for infringement of the '545, '775, '013, '203, '846, and '151 patents in connection with Lupin's sevelamer carbonate ANDA (09-cv-1258).  (D.I. 1).  On August 3, 2009, Lupin answered the Complaint in this action and filed a Counterclaim with counts seeking declaratory judgments of invalidity and/or non-infringement of the '545, '775, '013, '203, '846, and '151 patents.  (D.I. 8).  In view of the Paragraph III

certification filed for the '545, '013, '203, '846, and '151 patents, this Court lacks subject matter jurisdiction over the counts of Genzyme's Complaint and Lupin's Counterclaim directed to those patents in the 09-cv-1258 action. A stipulation of dismissal has been filed and those counts of Genzyme's Complaint and Lupin's Counterclaim have been dismissed. Only one patent is at issue in the 09-cv-1258 action—the '775 patent.

Lupin has asserted that the '775 patent is invalid and not infringed by Lupin's sevelamer hydrochloride ANDA or by its sevelamer carbonate ANDA. It is Lupin's position that many of the claims of the '775 patent do not cover the approved products—Renagel® (sevelamer hydrochloride), 400 and 800 mg tablets, and Renvela® (sevelamer carbonate), 800 mg tablets— or the products described in Lupin's sevelamer hydrochloride and carbonate ANDAs. Because many of the claims of the '775 patent are entirely irrelevant to the instant litigation, any discovery schedule adopted by the Court should begin with a specific identification of which claims of the '775 patent Genzyme is asserting against the defendants.

The principal legal issues in both the 09-cv-563 and 09-cv-1258 actions are the validity and infringement of the '775 patent.

### 2. Impax

Impax has filed pursuant to 21 U.S.C. § 355(j) Abbreviated New Drug Application ("ANDA") No. 90-846 seeking FDA approval to commercially market 400 and 800 mg sevelamer hydrochloride tablets. Impax has submitted to the FDA in connection with its ANDA No. 90-846 certifications pursuant to 21 U.S.C. § 355(j)(2)(B)(iv) ("Paragraph IV") asserting invalidity, non-infringement and/or unenforceability of U.S. Patent Nos. 5,667,775 ("'775 patent"); and 6,733,780 ("'780 patent").

Impax has also filed ANDA No. 90-975 seeking FDA approval to commercially market 800 mg sevelamer carbonate tablets. Impax has submitted to the FDA in connection with its ANDA No. 90-975 a Paragraph IV certification asserting invalidity, non-infringement and/or unenforceability of the '775 patent.

On March 13, 2009, Genzyme sued Impax in this Court for infringement of the '775 patent in connection with Impax's sevelamer hydrochloride ANDA (09-cv-653). (D.I. 1). On June 15, 2009, Impax answered the Complaint.

On April 3, 2009, Genzyme sued Impax in this Court for infringement of the '775 patent in connection with Impax's sevelamer carbonate ANDA (09-cv-846). (D.I. 1). On June 15, 2009, Impax answered the Complaint in this action.

In answering Genzyme's complaints on the two different products at issue, Impax has asserted a number of defenses. First, Impax has asserted that its proposed sevelamer hydrochloride product and sevelamer carbonate product do not infringe the claims of the '775 patent. In addition, Impax asserts under several distinct statutory and non-statutory bases that the claims of the '775 patent are invalid. The asserted statutory bases include, among others, assertions that the '775 patent claims are anticipated under 35 U.S.C. § 102, obvious under 35 U.S.C. § 103 and/or invalid for failure to meet the requirements of 35 U.S.C. § 112. Impax also asserts that one or more claims of the '775 patent is invalid under the doctrine of non-statutory double patenting.

As discovery proceeds, Impax may also assert other defenses to Genzyme's claims of patent infringement, including claims of patent unenforceability. Impax may also assert that it has standing to bring counterclaims concerning the '780 patent in both cases, thereby adding an entirely new patent into the case.

### 3. Sandoz

Sandoz has filed pursuant to 21 U.S.C. § 355(j) Abbreviated New Drug Application ("ANDA") 91-255 seeking FDA approval to commercially market 400 and 800 mg sevelamer hydrochloride tablets. Sandoz has submitted to the FDA in connection with its ANDA No. 91-255 certifications pursuant to 21 U.S.C. § 355(j)(2)(B)(iv) ("Paragraph IV") asserting invalidity, non-infringement and/or unenforceability of U.S. Patent Nos. 5,667,775 ("'775 patent") and 6,733,780 ("'780 patent").

On July 2, 2009, Genzyme sued Sandoz in this Court for infringement of the '775 patent in connection with Sandoz's sevelamer hydrochloride ANDA (09-cv-1750). Genzyme elected not to sue Sandoz on the '780 patent, providing a basis for Sandoz to file declaratory judgment Counterclaim counts against the '780 patent pursuant to 21 U.S.C. § 355(j)(5)(C). On September 30, 2009, Sandoz answered the Complaint and filed a Counterclaim with counts seeking declaratory judgments of invalidity and/or non-infringement of the '775 and '780 patents. At the time of this report, Genzyme has not yet answered or otherwise pled regarding the counts of Sandoz's Counterclaim.

### 4. Endo

Endo has filed, pursuant to 21 U.S.C. § 355(j), ANDA No. 90-112 seeking FDA approval to commercially market 400 and 800 mg sevelamer hydrochloride tablets. On August 18, 2009, Endo amended its ANDA No. 90-112 by submitting a Paragraph IV certification to the '775 patent, contending that the claims of the '775 patent are invalid, unenforceable and/or will not be infringed by the commercial manufacture, use, offer for sale or sale of the proposed drug products that are the subject of Endo's ANDA No. 90-112 prior to the date of the expiration of the '775 patent.

On October 1, 2009, Genzyme sued Endo in this Court for infringement of the '775 patent in connection with Endo's ANDA No. 90-112. On October 13, Genzyme requested that Endo waive service of the Complaint. Endo agreed and therefore has until December 14, 2009 to file an Answer. Endo will assert that the '775 patent is invalid and not infringed by Endo's ANDA No. 90-112, and will file a Counterclaim seeking declaratory judgments of invalidity and/or non-infringement of the '775 patent. As discovery proceeds, Endo may also assert other defenses to Genzyme's claims of patent infringement, including claims of patent unenforceability.

## II.   DISCOVERY TO DATE.

No discovery to date has been taken by Plaintiff or Defendants.

## III.   DISCOVERY TOPICS AND ISSUES.

Plaintiff and Defendants propose consolidation of the *Genzyme Corp. v. Lupin Ltd.*, No. 1:09-cv-00563-JFM (D. Md.), *Genzyme Corp. v. Impax Labs., Inc.*, 1:09-cv-00653-JFM (D. Md.), *Genzyme Corp. v. Impax Labs., Inc.*, 1:09-cv-00846-JFM (D. Md.), *Genzyme Corp. v. Lupin Ltd.*, No. 1:09-cv-01258-JFM (D. Md.), *Genzyme Corp. v. Sandoz, Inc.*, 1:09-cv-01750-JFM (D. Md.) and *Genzyme Corp. v. Endo Pharms. Inc.*, 1:09-cv-02589-JFM (D. Md.) for purposes of discovery only.

Discovery in these cases, whether consolidated or not, will involve a variety of complex issues. First, each of the defendants has asserted that it does not infringe one or more of the asserted claims of the '775 patent. Discovery will thus entail detailed fact and expert discovery on a total of six products related to two separate products, sevelamer hydrochloride and sevelamer carbonate. This inquiry will need to be conducted with respect to the 22 separate

claims contained in the '775 patent, none of which have been eliminated from the case by Genzyme.

Second, each of the defendants has also asserted that one or more of the 22 separate claims of the '775 patent are invalid as anticipated, obvious and/or for failure to meet one or more of the requirements of 35 U.S.C. § 112.  At least Impax has also asserted that one or more claims are invalid under the doctrine of non-statutory type double patenting, and Endo will do the same when it files its Answer.  Discovery on these defenses—by each of the four defendants—will involve detailed fact and expert analysis of prior art references, the knowledge and skill of a hypothetical person of ordinary skill in the art at the time of the invention of the '775 patent, the patent specifications and related file histories, and the work the three inventors of the '775 patent allegedly did and when they did it.  Discovery on those defenses will involve at least a large number of document requests, interrogatories, requests for admission, and depositions, some of which may be depositions of third parties.

In addition, Sandoz seeks discovery regarding the '780 patent.  Such discovery will include information related to the invalidity, unenforceability, and asserted infringement of the '780 patent and marketing and sale of sevelamer hydrochloride.

### IV.  PROPOSED SCHEDULE.

Parties agree on the general order for discovery and dispositive motion briefing.  Plaintiff and Impax advocate for a schedule culminating in a trial in approximately September 2012.  Lupin, Sandoz, and Endo advocate for a schedule culminating in a trial in approximately January 2012.  Those schedules are included in the table below.

Plaintiff and Defendants disagree on the ability of the parties to amend or supplement the contentions provided for in the below schedules.  Plaintiff advocates that the contentions

prescribed by the schedule be final, and that the parties only be allowed to amend or supplement the contentions on a showing of good cause. Defendants advocate for a deadline, before Expert Reports are served, by which the parties can update their contentions without leave of Court.

Plaintiff and Defendants disagree on allowing dispositive motions before the date provided in the schedule. Plaintiff and Impax advocate for a prohibition on filing dispositive motions before the date provided for in the schedule. Defendants Lupin, Sandoz and Endo advocate for allowing dispositive motions at any time prior to the date provided for in the schedule.

Lastly, Plaintiff and Defendants disagree on the close of fact discovery in relation to claim construction. Plaintiff advocates closing fact discovery after documents are produced and fact depositions end. Defendants advocate keeping fact discovery open until after the Court issues a claim construction Order.

**A.    Plaintiff.**

As the parties have described above, this case involves complex issues and six different products. Although some of the issues overlap, Plaintiff must in essence litigate six cases concurrently. This multiple-front litigation is especially burdensome during depositions, expert discovery, and dispositive motions. Plaintiff's and Impax's proposed schedule reflects that reality.

In the spirit of cooperation, Plaintiff has agreed—contrary to the New Jersey Patent Rules suggested by Your Honor—to identify the claim(s) it is asserting and identify its infringement contentions before Defendants are required to identify their non-infringement and invalidity contentions.

Plaintiff advocates, however, that parties shall only supplement their contentions on a showing of cause (*e.g.*, later discovered information that has caused a party to reassess its previously disclosed litigation position). This requirement will ensure an efficient and fair process by requiring the parties to fully disclose their positions early in the litigation. *See Takeda Chem. Indus. v. Mylan Labs.*, 549 F.3d 1381, 1387 (Fed. Cir. 2008) (noting that "it seems reasonable to expect assertions of invalidity based on prior art to remain relatively consistent as the prior art should be known when the certification of invalidity is made").

Plaintiff and Impax also advocate for a prohibition on filing dispositive motions prior to the date provided in the schedule. Due to the complexity of the case and the need for expert discovery to understand the issues at play, allowing dispositive motions prior to the date provided in the schedule is inefficient. The number of products and defendants also raises the possibility of serial briefing, which wastes the Court's and Plaintiff's time and resources.

Lastly, Plaintiff advocates for the close of fact discovery after document production and fact depositions conclude. Plaintiff believes it is unnecessary and wasteful to revisit fact discovery after the Court issues its claim construction Order.

**B.     Defendants.**

While Lupin, Sandoz and Endo agree with Plaintiff that this case involves complex issues and six different products, they submit that their proposed schedule with a trial date no earlier than January 16, 2012 – over two years from now – provides adequate time for the parties to conduct the litigation.

With respect to contentions, Defendants submit that Genzyme's proposal on supplementation essentially ignores the purposes of the discovery process. Defendants in no way are suggesting they want to scrap the invalidity theories presented in their Paragraph IV notice

letters and pursue entirely new theories on invalidity at a late stage in the case. Rather, Defendants simply do not believe their hands should be tied from pursuing in litigation invalidity or infringement defenses that are unknown at this point or only through the discovery process rise to the level of good faith defenses. Defendants' proposal in this regard avoids the need to unnecessarily take up the Court's time under these circumstances. Moreover, the *Takeda* decision cited by Genzyme did not condemn the development of new invalidity positions based on new facts revealed during the ordinary course of discovery. *Takeda*, 549 F.3d at 1387 ("[W]e do not believe that the district court faulted Alphapharm simply for changing its obviousness argument at trial from the theory advanced in the Paragraph IV letter."). Yet, Genzyme's proposal does just that, and for no good reason. There is no reason that truly sound invalidity positions should be discarded merely because they are undeveloped at the outset of litigation. Defendants additionally point out local patent rules for other Federal district courts allow for amendment of contentions without cause , as proposed here. *See, e.g.*, Northern District of Illinois Local Patent Rules 2.1, 2.2, 3.1 and 3.2 (which set up preliminary and final contention stages).

    For similar reasons, Defendants propose that fact discovery be scheduled to close only after a ruling on claim construction issues. This will provide all parties with the ability to conduct good faith discovery arising from any ruling by the Court on those issues, and will, again, avoid unecessary requests for leave of Court.

    With respect to early summary judgment, it is Lupin, Sandoz and Endo's position that the schedule should leave open the possibility of early summary judgment for efficient and early resolution of these cases. This is both allowed and contemplated by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 56(b), 1.

| Event | Plaintiff/Impax Proposal | Lupin/Sandoz/Endo Proposal |
|---|---|---|
| Initial Scheduling Conference | 11/04/2009 | 11/04/2009 |
| Defendants produce entire ANDA | 12/01/2009 | 11/13/2009 |
| Parties Exchange Initial 26(a) Disclosures | 02/8/2010 | 12/9/2009 |
| Plaintiff provides Asserted Claims and Infringement Contentions and documents | 02/15/2010 (Impax proposes that Contentions are preliminary; Plaintiff proposes they are final) | 12/16/2009 (Proposes that Contentions are preliminary) |
| Defendants provide Invalidity & Non-Infringement Contentions and documents | 03/15/2010 (Defendants propose that Contentions are preliminary; Plaintiff proposes they are final) | 01/29/2010 (Proposes that Contentions are preliminary) |
| Exchange of Proposed Terms for Construction | 08/13/2010 | 05/14/2010 |
| Exchange of Preliminary Claim Construction and extrinsic evidence | 10/15/2010 | 06/11/2010 |
| Joint Claim Construction and Prehearing Statement | 11/01/2010 | 07/9/2010 |
| Completion of fact discovery (including depositions) | 12/03/2010 (Impax proposes for this date 6/1/11, or 60 days after the Markman ruling, if later.) | 02/1/2011 (or 60 days after Markman ruling, if later) |
| Deadline for amending pleadings and adding parties | 12/10/2010 | 09/1/2010 |
| Opening cross-*Markman* Briefs and any supporting evidence including expert reports. | 01/14/2011 | 10/1/2010 |

| | | |
|---|---|---|
| Responsive cross-*Markman* Briefs and evidence supporting claim construction, including responsive expert certifications or declarations | 03/01/2011 | 11/15/2010 |
| Completion of expert *Markman* discovery | 03/07/2011 | 11/22/2010 |
| Claim Construction Hearing | 03/14/2011 | 12/01/2010 |
| Deadline by which parties may serve additional, supplemental and/or revised infringement, invalidity and/or non-infringement contentions without leave of Court. | 21 days before Opening Expert reports. (**Plaintiff proposes that all supplemental contentions be done with leave of Court**) | 01/7/2011 (or 30 days after a ruling on claim construction issues, if later) |
| Opening Expert Reports on issues for which the party bears the burden of proof | 06/15/2011 (or 60 days after a ruling on claim construction issues, whichever is later) | 02/15/2011 (or 60 days after a ruling on claim construction issues, whichever is later) |
| Responsive Expert Reports | 08/15/2011 (or 120 days after a ruling on claim construction issues, whichever is later) | 04/1/2011 (or 60 days after Opening Expert Reports) |
| Reply Expert Reports | 09/15/2011 (or 150 days after a ruling on claim construction issues, whichever is later) | 05/2/2011 (or 30 days after Responsive Expert Reports) |
| Expert depositions begin | 11/01/2011 (or 195 days after a ruling on claim construction issues, whichever is later) | 05/16/2011 (or 15 days after Reply Expert Reports) |
| Expert depositions end | 02/01/2012 (or 285 days after a ruling on claim construction issues, whichever is later) | 07/1/2011 (or 45 days after expert deposition period begins) |

| | | |
|---|---|---|
| Filing Dispositive Motions and Opening Briefs | 04/01/2012 (or 345 days after a ruling on claim construction issues, whichever is later) **(Plaintiff and Impax advocate a prohibition on filing a dispositive motion at an earlier time)** | 08/01/2011 (or 210 days after a ruling on claim construction issues, whichever is later) **(Lupin, Endo and Sandoz advocate allowing a party file a dispositive motion at an earlier time)** |
| Opposition to Dispositive Motions | 05/15/2012 (or 390 days after a ruling on claim construction issues, whichever is later) | 09/01/2011 (or 245 days after a ruling on claim construction issues, whichever is later) |
| Replies to Dispositive Motions | 06/15/2012 (or 420 days after a ruling on claim construction issues, whichever is later) | 09/15/2011 (or 260 days after a ruling on claim construction issues, whichever is later) |
| Deadline for submission of Pretrial Order | 08/16/2012 (or 480 days after a ruling on claim construction issues, whichever is later) | 12/01/2011 (or 315 days after a ruling on claim construction issues, whichever is later) |
| Trial | 09/13/2012 (or 510 days after a ruling on claim construction issues, whichever is later) | 01/16/2012 (or 360 days after a ruling on claim construction issues, whichever is later) |

## V.  DISCOVERY LIMITATIONS.

### A.  Interrogatories.

#### 1.  Plaintiff.

Maximum of 15 joint interrogatories (including discrete subparts and contention interrogatories) total for Plaintiff to all defendants and maximum of 10 interrogatories (including discrete subparts and interrogatories) to each Defendant.  Maximum of 15 joint interrogatories (including discrete subparts and interrogatories) for Defendants collectively and maximum of 10

interrogatories (including discrete subparts and interrogatories) for each Defendant (both Lupin entities are considered one Defendant for this provision).

### 2. Defendants.

Maximum of 25 interrogatories (including discrete subparts and contention interrogatories) total for Plaintiff, which includes joint interrogatories to all Defendants and interrogatories to specific Defendants. Maximum of 15 joint interrogatories (including discrete subparts and contention interrogatories) for Defendants collectively and maximum of 20 interrogatories (including discrete subparts and contention interrogatories) for each Defendant (both Lupin entities are considered one Defendant for this provision).

## B. Fact Depositions.

### 1. Plaintiff.

Federal Rules of Civil Procedure govern depositions, except Defendants shall depose all witness jointly. Defendants are permitted ten hours of deposition time for joint depositions divided amongst them as they see fit.

### 2. Defendants.

The Federal Rules of Civil Procedure govern depositions. Whenever the Defendants seek to depose the same fact witness, they will reasonably coordinate to take such depositions at the same time and place and will make reasonable efforts to avoid asking duplicative questions.

## C. Requests for Production and Admission.

Plaintiff and Defendants propose that the limitations prescribed in Local Rule 104 govern requests for production and admission.

## VI. SPECIAL DISCOVERY NEEDS / ELECTRONIC DISCOVERY.

The parties have initiated discussions concerning the extent, scope, and handling of electronic discovery and will endeavor to continue such discussions throughout the initial stages of discovery. The parties will cooperate to produce electronically stored information in mutually agreeable formats and media. The parties believe that it is not necessary to specify a particular format for such production at this time.

## VII. PRIVILEGE ISSUES.

The parties agree to follow the guidelines and procedures set forth in FED. R. CIV. P. 26(b)(5) regarding claims of privilege. The parties further agree that no discovery of privileged communications regarding either parties' exceptional case claim shall occur prior to, and shall be stayed pending, resolution of any and all liability issues.

## VIII. PROTECTIVE ORDER.

The parties recognize the need for a comprehensive protective order. The parties will negotiate the terms of a protective order, and will file a joint motion for a stipulated protective order with the Court. The parties have agreed that any production made prior to the entry of a protective order shall be on an outside counsel eyes only basis.

\*   \*   \*

The foregoing Joint Rule 26(f) Report is respectfully submitted for the Court's consideration in connection with the conference scheduled to proceed before the Honorable J. Frederick Motz, United States District Judge, on the 4th day of November, 2009, at 4:30 PM Eastern.

| | |
|---|---|
| Respectfully submitted, | Dated:  November 3, 2009 |
| By:_____/s/_____ | By:_____/s/_____<br>     On behalf of all Defendants |
| Geoffrey H. Genth (Bar. No.: 08735)<br>George E. Brown (Bar No.: 14681)<br>KRAMON & GRAHAM P.A.<br>One South Street<br>Suite 2600<br>Baltimore, MD 21202<br>ggenth@kg-law.com<br>gbrown@kg-law.com<br>(410) 752-6030 Telephone<br>(410) 539-1269 Facsimile<br><br>*Attorneys for Plaintiff Genzyme Corporation*<br><br>Of Counsel<br><br>Scott K. Reed, Esquire<br>Filko Prugo, Esquire<br>Christopher E. Loh, Esquire<br>Brian O'Reilly, Esquire<br>Charlotte Jacobsen, Esquire<br>Fitzpatrick, Cella, Harper & Scinto<br>1221 Avenue of Americas<br>New York, NY 10104-3801<br>(212) 218-2100 Telephone | D. Christopher Ohly (#01725)<br>Schiff Hardin LLP<br>1666 K Street, NW<br>Washington, DC 20036<br>Telephone:  (202) 778-6458<br>Facsimile:  (202) 778-6460<br>dcohly@schiffhardin.com<br><br>*Attorneys for Defendants Lupin Ltd. and Lupin Pharmaceuticals, Inc.*<br><br>*Of Counsel:*<br><br>William A. Rakoczy<br>Paul J. Molino<br>Deanne M. Mazzochi<br>Andrew M. Alul<br>Tara M. Raghavan<br>RAKOCZY MOLINO MAZZOCHI SIWIK LLP<br>6 West Hubbard Street, Suite 500<br>Chicago, Illinois  60654<br>Telephone:  312-222-6301<br>Facsimile:  312-222-6321<br>wrakoczy@rmmslegal.com |
| | Robert B. Hopkins (Bar No. 06017)<br>Susan M. Euteneuer (Bar No. 26997)<br>DUANE MORRIS LLP<br>111 South Calvert Street, Suite 2000<br>Baltimore, MD  21202-6114<br>Telephone: 410-949-2937<br>Facsimile: 410-949-2976 |

|  | rbhopkins@duanemorris.com<br>smeuteneur@duanemorris.com<br><br>*Attorneys for Defendant,* SANDOZ INC.<br><br>*Of Counsel:*<br><br>Thomas J. Filarski (*pro hac vice*)<br>Meredith Martin Addy (*pro hac vice*)<br>Brandon C. Helms (*pro hac vice*)<br>BRINKS HOFER GILSON & LIONE<br>NBC Tower, Suite 3600<br>455 North Cityfront Plaza Drive<br>Chicago, Illinois 60611-5599<br>Telephone: 312-321-4200<br>Facsimile: 312-321-4299 |
|---|---|
|  | J. Stephen Simms (#4269)<br>SIMMS SHOWERS LLP<br>20 South Charles Street, Suite 702<br>Baltimore, MD 21201<br>Telephone: (410) 783-5795<br>Facsimile: (410) 510-1789<br>jssimms@simmsshowers.com<br><br>*Attorneys for Defendant Endo Pharmaceuticals Inc.*<br><br>*Of Counsel*:<br><br>Matthew J. Becker<br>Chad A. Landmon<br>Thomas K. Hedemann<br>AXINN, VELTROP & HARKRIDER LLP<br>90 State House Square<br>Hartford, CT 06103<br>Telephone: (860) 275-8100<br>Facsimile: (860) 275-8101<br>mjb@avhlaw.com<br>cal@avhlaw.com<br>tkh@avhlaw.com |
|  | Michael A. Del Negro (Bar No. 17344)<br>WINSTON & STRAWN LLP<br>1700 K Street, N.W.<br>Washington, DC 20006<br>Tel: (202) 282-5000 |

|  | Fax: (312) 282-5100<br>mdelnegro@winston.com<br><br>*Attorneys for Defendant IMPAX Laboratories, Inc.*<br><br>*Of Counsel:*<br><br>James F. Hurst<br>Maureen L. Rurka<br>Kevin E. Warner<br>WINSTON & STRAWN LLP<br>35 West Wacker Drive<br>Chicago, Illinois  60601<br>Tel:  (312) 558-5600<br>Fax: (312) 558-5700<br>jhurst@winston.com<br>mrurka@winston.com<br>kwarner@winston.com<br>aahmed@winston.com |
|---|---|